Case number 22-3068. United States of America v. Salusthian Lutamila, also known as Saluth Lutamila, also known as Lutamila Salublaxo Verdon. Miss Becky, Freddie Mellon. Miss Kelly, Freddie Mellon. Good morning, Council. I'm Ivan. Please proceed when you're ready. Good morning. May it please the Court. It's Robonte from the Federal Prosecutor's Office for Mr. Salusthian Lutamila. With me at Council table is Tony Axel for his entrance and appearance. Mr. Lutamila was sentenced pursuant to Guideline 2B1.1, which enhances a defendant's offense level based on the amount of, quote, loss. That term is undefined in the Guidelines, but the Guidelines commentary directs courts to apply the greater, quote, intended loss or, quote, actual loss. That is what the district court did here when it used an intended loss figure of $610,000 in the 2B1.1 loss table calculation rather than the amount that the victim actually lost, which was $76,069. But why should the court give a defendant who's been charged with a particular crime the benefit of essentially collateral help when the money doesn't return to a certain extent as opposed to what they intended to rob somebody of, or in this case, what they actually stole? So, that effected the plain text of the word loss. And it's important to realize here that in 2B1.1 out of the 20 special offense characteristics, this is the only one that does not use the word the offense. It uses the word loss. It doesn't use the amount taken. Again, it uses the word loss. And loss, the plain meaning of that term, is the amount that the victim actually lost. And that comes from the dictionary definitions that the Third Circuit and the Sixth Circuit cited to. It also comes from what a reasonable person would understand for that term. If we know temporarily how to measure loss, I might lose my keys this morning. I might find them later in the day, but that doesn't change the fact that they were lost. Right, Your Honor. And again, we're asking the word loss at the time of sentencing. No one's asking that word at the time of indictment. When the PSR is being written by the probation officer or the judge is sitting down to sentence the defendant, that's when we're asking the term loss. Why is that the perfect time? Someone could be physically injured, they could be beat up, and they were injured at the time of the offense. By the time of sentencing, it could be years later. Right. And we recognize when we assign this calculation to happen at the time of sentencing, we realize what we always realize about sentencing, which is that is the time when the judge has the most perfect information he is going to get, and he's able to account for relevant situational factors that are critical for implementing the guideline that's written. For example, if you have a probation officer potentially saying that you owe restitution, and many defendants will try to get that restitution paid before they come to court. So the defense counsel can be very strategic about when the sentencing actually occurs by asking for different conveniences, asking for the ability to pay the restitution, and so their loss is lower. Right. Your Honor is correct. But that's where the sentencing judge has that discretion, for example, to vary outside, you know, using the 35-53 factors, or, you know, to use his discretion to both implement the guideline as written, but then also use his ability to vary. And it's important to realize that this is the policy call that the commission made, right, to use loss, and by using loss to make that calculation, incorporating any offsetting amounts, incorporating any recovered amounts at the time of sentencing. If the commission wished to make a different policy call, that policy call is their choice, and they can do that, but they can't do that in the commentary. They must do that in the guideline. And I wanted to also… So, based on this line of argument, I'm not quite understanding why we care about commentary, for the one reason that if you think that actual loss just means actual net loss at the time of sentencing, and that seems to be what you think the plain meaning of loss is, then why do we care about the difference between actual loss and intended loss? Because intended loss just doesn't figure into it at all. It's just kind of… So, the commentary that talks about the possibility of obtaining a greater factor loss than intended loss is just a side note. It has nothing to do with this case at all. Well, the commentary… You're right that the loss, the plain meaning of the term loss, is the amount that the victim actually suffers, and that will necessarily incorporate any recovered amounts and any offsets. That may or may not be right, because what I'm saying is, if we assume that that's your view, then what does the commentary about intended loss have to do with it? Because at the end of the day, the concept of intended loss, that doesn't have to do with the difference between what was initially the loss and then what was later lost at some point later after it's not recovered. Intended loss just doesn't have to do with that. Well, intended loss or attempted loss, typically, judges use that term to look at what the defendant originally intended, right? So, in this case, for example, it's the $610,000, and that's obviously what is straightforward from the commentary and what judges typically apply in terms of calculating the guidelines range. Now, here, actual loss in terms of what the victim actually suffered is, Your Honor, is correct. That is the amount calculated at sentencing that incorporates any recovered amounts. You do not, I guess, need the commentary to arrive at that. That's your position on intended loss. What I'm saying is, whatever the right answer on actual loss means, it could either be what was lost at the beginning or what was ultimately lost counting recovery by the time of sentence. That's the debate. But that debate just doesn't have anything to do with intended loss. It has to do with intended loss, to the extent that intended loss was used by the judge, obviously, in this case, as the amount that you wish to implement into the guidelines range. Now, obviously, like... But $610,000 was the actual loss. It was not the actual loss. It was the amount taken in this case. But it wasn't the actual loss because, again, we're asking that question at sentencing. Because, again, you're... To go with Chief Judge Schrims' option, you're kind of applying this based on your definition of actual loss, but there could be other perspectives. It's not my definition. It's the common-sense understanding, the ordinary, plain meaning of the term loss, which, again, as the Third Circuit and the Sixth Circuit said, has nothing to do with what the defendant intended to take, but it's actually what the victim actually lost. We've been sentencing for a long time. I know that myself and Judge Wilkins, because we're on the federal trial court, we've had lots of cases where it's intended loss. For example, I've had cases where you have a tax situation and you are the tax preparer and you're doing all these types of deductions or credits, et cetera, et cetera, to allow somebody to get a bigger return. That gets caught over in, let's say, our center in Dallas or somewhere like that. And so the fact that it got stopped, it doesn't mean that you didn't intend for those people to get all that money back and intend to rob the IRS of those funds. It happens in government contracting schemes, too. If you overdid it and you try to get money in that regard, too, however, you'll be over-contracted and over-subscribed to what you should actually get paid and things of that nature. So there's reason for intended loss from the standpoint of what's your mental intention with respect to the crime. And so that's why those terms seem to be distinguished out, because you should not get credit. And that's what the district court wrestled with. You should not get credit from the fact that somebody else paid it. Even if your mother paid your fine or your fee or whatever your probation loss was, that there seems to be at least some sense that you don't get credit for the crime. So, Your Honor, again, we're looking at the term loss as it's written in this guideline. And I'll just point out again that the specific offense characteristics that are used to hike up the defendant's offense level for this guideline use the word the offense every one of the 20 times that SOCs are used. But for this SOC, there's one word used, and it's loss. It's not taken. It's not the offense. It's loss. And loss carries the plain meaning of the amount the victim actually suffered. And let me give you an example. If you have a forfeiture problem, standard of review, it's binary. It's a defense agreed. I'm looking specifically at 2076. The defense said, as set forth in the pre-sentence report, the applicable sentencing guideline range is 51 months. The end or seated period is for a 12-month, one-day sentence as a variance. And I didn't see anything at the sentencing hearing that changed that. And as a district judge, the first thing you're supposed to do is calculate the guidelines and determine whether either side has an objection to the guidelines calculation. And then resolve that objection, because then you'd have to do more departures and all of that. And then you go on to the 35 different VA factors. We can't have a situation where the defense counsel says that the guidelines calculation is correct in the district court, and then comes to the court of appeals and says, no, actually, it wasn't correct. And that seems like what we have here. Your Honor, that's not correct because on Joint Appendix 134, the defense counsel stated specifically that what Mr. Lula-Mila had a problem with was the actual offense-level calculation. It was not whether the court should vary, but whether the- That's not the language that I'm looking at. It's, she said, what should be measured is the actual loss, that 76,069, and that's where we get the seven plus the six. So she identifies the six points as the enhancement from the loss table that should be applied, rather than the 14 points that the PSR identified. And that is an objection. She's informing the court that she thinks that the court should be using six points as its enhancement for the 2B1.1 loss table. And that's what the court, that's what Rule 51 requires, simply informing the court of the action that the defendant wishes the court to make. I'm getting 13. You don't even get a guideline for 12 months. I'm sorry? That doesn't even compute because at 13, you don't get a guideline for 12 months. I mean- And then the court later says, so everyone agrees that the guideline is for 51 to 63 months, and there's no objection to that at all? Well, I think the objection is here on 134, where she identifies, again, she informs the court that she objects to the loss amount. Well, she's clarifying, again, you don't have to use any particular words. That's what this court held in Abney. What she's doing is she's informing the court of the action that she wishes the court to take, wishes the court to take, which is to use the $76,000 figure in the loss table, and that would result in the, quote, 7 plus the 6. That's six points right there. That's the enhancement that she thinks that the court should arrive at by using the $76,000 figure in the loss table. And, again, the threshold from Abney is low. That's what this court said in Brock. It's a very low threshold. It's a straightforward- sentence. In Gaul, all of the Supreme Court cases, post-Voter and Abney, would say that guidelines are right. Still say that our job on appeal, our first job is to ensure that there is no procedural error. And it explains what it's about. What I want Eric to understand is to ensure that there's no procedural error and that they calculate the guidelines correctly. The judge here is a very experienced judge, former federal prosecutor. They didn't pick up that there was an objection to the guidelines calculation. I know we have. The whole point of the plain error rule is that we're supposed to, yes, we know there are magic words, but you've got to at least, certainly if you have written that the guidelines calculation and the appeals are correct, you've got to at least bring it to the district court's attention that, oh, actually, it's not correct. I shouldn't have said it. I think your Honor is right that this is a very experienced judge. It's extremely experienced. And I think he recognized that this, and he did. In fact, when he states later on that, you know, I don't agree that this is the number I should focus on. He recognizes that she is objecting to the guidelines range. And that's why he states that later on. And so, again, the amount of the actual. I don't think so. I mean, she said seven plus the six, which means she's looking directly at the guidelines range calculation, the events level calculation under 2B1.1 law for the law school there. She's not making a variance. Seven plus six would be the guidelines range for 18 months. So she did. She also said later on that I think I missed, you know, I didn't add the levels for the level I missed adding. She says that on 137. So she corrects her, her guidelines calculation there. But she, she, the point is here. She is saying that the offense, the enhancement from 2B1.1 should be the six. She's putting that on the record and she is informing the court that that is what the enhancement should be from the 2B1.1 law school. And it should be that because of the $76,000 figure that should be, that should be used. And she identified that it's actual loss. And again, the term actual loss only comes from the commentary. I mean, judge Boasberg, again, very experienced judge knows that actual loss comes from the commentary. And that's how the PSR got to the 610 because it's applying the greater 610,000 or $76,000. That's why you can't look to the commentary. I'm sorry. That's why we couldn't look to the commentary. Number one, it doesn't necessarily show that the district court did because it's not mentioned specifically like the word commentary. I'm looking at it and there's a definition, but even if they did, tell me what's your position about why they couldn't do that. Not because the commentary conflicts with the plain meaning of the word loss. So again, the plain meaning of the word loss is the amount of the victim actually lost. And that must incorporate any offsets or recouped amounts until the time of sentence. And you're just relying on other circuit precedent for that. Nothing in this section of the Supreme court. I'm relying on the Supreme court's decision in kind of, which means we have, which says we have to look directly at the plain text of, of the guidelines of, you know, obviously a legislative rule, but by analogy through Stinson of the guidelines texts. Well, I hear clarified and narrowed Stinson and it did so by saying you must start with the plain text. And if that text is unambiguous as it is here, we don't need to go any further. But you're, but you're when you say loss and then you have a commentary that says actual loss versus intended loss. How am I to believe that the text is clear? You seem to be defining it, that the definition is not there. So as the court knows, we apply the guidelines it's written and when the term loss undefined and the term loss, because it's undefined, we look typically to the dictionary definitions of those definitions. Unambiguously, that loss is the amount loss as, as, as judge Murphy's. But the 16 is what was stolen. So you're, you seem to be further giving it a, almost like a sub definition. So the, so the dictionary definitions comport with what they reflect, what a reasonable person would understand, what common sense would understand. And let me just give you an example that might kind of drive this home. Imagine that you're walking down the street with two $50 bills and a pick pocket tapes, both those $50 bills. And as he's running away and you're running after him, he drops one and you put that $50 back in your pocket. If your friend asks you what's the loss, any reasonable person would say $50. No one would say a hundred dollars. Right. And that is what, what's happening here. He, the victim got $533,000 back. The loss by plain meaning of the word is the $76,000. And that, again, it comes from the dictionary definitions, but also from common sense. And that's what the sixth circuit has, has recognized straight from the dictionary in, in, in Riccardi and Smith. And it said that there's, there's nothing in the dictionary definitions that's even close to intended loss. It's also what the third should be recognized in banks. When we, when, when loss is calculated, what we, what does the case law say about time, value, money, and interest? Do we add interest so that if a million dollars was stolen three years ago, that had been invested in stock market, it'd be, you know, 0.5 million dollars or something. Um, um, you wouldn't be arguing that, um, definitely look at loss as a, the time of sentencing, you would be arguing your client would look at loss at the time. Yeah. No, I mean, so again, we're saying this is a calculation that must happen at the time of sentencing. And like any actual loss calculation that can incorporate various factors, it could incorporate an opportunity cost. If it was, you know, that type of calculation is a rigorous calculation. And we know this, you know, in the restitution context where we, again, do an actual loss calculation at the time of sentencing, it could incorporate different factors here. Obviously it's very straightforward. The actual loss here was $76,000. Um, at 69, 76,000 69. Um, that was straightforward because that is the amount. You have 610,000 minus the $533,000. That was, that was recouped. Um, now. So it's straightforward in this case. And that's what we think, um, you know, this court should, the district court should have used is that $76,000. 76,000. I probably don't have any questions for you. It's not, you know, you will not hear about it. Welcome to government. Yeah. Morning. May please the court. Catherine Kelly on behalf of the United States. Your honors in this. This case. First of all, Mr. Mello has waived his claim that the district court committed procedural error. Calculating the loss amount under to be 1.1. He didn't just fail to raise this challenge in the district court. He specifically agreed in his sentencing memo. And I quote asset for the PSR. The applicable sentencing guidelines range is 51 to 63 months. He's got a zero criminal history points. And the fence level. Which included a 14 level increase in this case for a $610,000 loss amount. For that reason, we don't believe the court should even address this case. If the court is to address it, however, do you think we, the way waiver. I never. Intercept. Is that if you assert waiver. We have to address. What are those waivers? Or can we just say. And let's just assume for our purposes. That you're going to prevail. Just so I can understand. Yeah. Do you, is the government's perspective that will, because you just sort of wavered because there's. Back around. That we have to decide whether the waiver or not, or it's a court. Does the court have the ability to just assume away the waiver question? It's my understanding. The court could in its discretion still, if it claims way. Choose to entertain a claim. Even for way. We would say do not, But in my experience, it has been, I've seen courts say. If it's waived, You can still use our discretion and. Review this question, at least under the plain error review standard. Which is the court. And we would still say though, in this case, it is an actual waiver because it wasn't just a matter of forfeiting a claim here. The defense council actually said. And it's sentencing memo. We agree that the calculation. Of the loss amount is, is correct because they were saying that the sensing range was. Calculated correctly. And it's very clear that the argument, the defense council was making in its. Sentencing memo is that. Fine. The. The guidelines range is correct here, but we would like you to vary from that. Guidelines range, Very downward to a sentence of 12 months in one day. Based on the fact. In the sentencing memo, she was. Claiming that. She wanted their parents mainly in light of Mr. Ludomila's history and characteristics. And his family needs. She went on to explain. And this is what's different between our argument. The defense argument. Mr. Ludomila at the sentencing hearing did not. Create a new issue and say, no, in fact, I do think that the loss amount calculation that set the back lines range is wrong. And it should be lower. What the defense council said there was that. First of all, the court should. Choose the term of the court should deviate from guidelines. And then she actually said that she wanted to explain. Her request for a 12 month in one day sentence. And that's when defense council got into the argument that really the. Amount that should be measured here is what she was calling the actual loss. And she was saying that that was the $76,000. And then she analogized to that being a 12 to 18 month range. If you looked at the. Applicable to be 1.1. Last table. Yes. On page 134. She said that that's a seven. And then she added six additional levels for. On the law. $76,000. It is. It is an application of the last table and two people. To be 1.1. However, defense council started that point. Her argument saying, I realized that. I didn't lay out my sentencing memo. So. Why or how we got to the 12 months and one day request, which was of course, a variance request. In the plain language of her sentencing memo. So. Essentially what council was doing was saying that the court should vary to a lower sentence. To put the defendant in a place that he would be. In a place that he would be. In a place that he would be. Had he actually only stolen $76,000, but that's not what happened here. Everybody agreed. And I believe we still agree today. That Mr. Ludomila in fact, stole $610,000. And he should not be given a windfall from the fact that through no help from him, by the time of sentencing. The credit union with help from each rate was able to recoup approximately $533,000. Of that money. Well, what's your response to the. The argument. It was before earlier to the effect that if a pickpocket. It's too. If you don't. The drops one. Not about. I think you're right. Everybody does. So. It's part of. But in terms of. The loss is the loss to the victim, which is in fact. Unless the victim picks that right up off the sidewalk, he is still lost a hundred dollars. Whether or not the defendant ends up holding on to both $50 bills. It's not really the issue. And it's certainly not the issue. In any realm. How much. The victim got back by the time. Sentenced. We pointed out the Merriman case in our brief in particular. And that that case makes clear that the purpose of a loss calculation under the sentencing guidelines is to. In the fraud situation. It should be 1.1 is to measure the magnitude of. Half the time. That's happens. Which is what. The court was doing here by saying the offense level is. The extra 14. Levels based on $610,000. That's correct. And Merriman then went on to say the fact that a victim is recovered. Part of. The money they lost by the time of sentencing. Doesn't have any bearing. On. But should be 1.1 calculation because it doesn't. Diminish the defendant's culpability in any way. And. Of course the. Court. Would be free to look at the guidelines commentary here. And that fits exactly into note. Three E of the commentary. Which does in some very narrow circumstances, give a defendant. Credits towards the loss amount. But those don't fit here. It only gives credit to a defendant or. The victim recouping some loss amount. First of all, the defendant had some hand in returning that money. That did not happen here. I did be. Did this completely on their own? No. And if that money is recouped by the victim at some point before. The crime is discovered. What we have here is Mr. $610,000. By in full January of 2019. IDB, the credit union discovered this loss in April of 2019. When they hired a new CF. And it was after that, that they were able to recoup. The $533,000 for each. Right? So that's. Again, no help from the defendant and after. It's discovered. So even if we do look at the guidelines commentary, it just doesn't fit here. I think it's quite clear though, that lost since everybody agrees, it's not defined in the text. This is not a situation where the term loss is unambiguous. Defendant hasn't cited any cases where loss is. The amount of money a victim has recovered. It takes out rather than the amount of money that a victim has recovered at the time of sentencing. There's simply no case law that supports that. And there isn't any case law that defends support saying that loss is a general matter should just be addressed as what that amount was at the time of the sentence. Are you saying the. Guideline. The guideline unambiguously favors the government. On whether it'd be taken into account recovery. Are you saying it's ambiguous? Look at the commentary. The commentary makes clear. There's only what the defense. I'm just saying that the term loss. Is ambiguous. In the text. Unambiguously. Rejects. I would say, first of all, that the, the loss is not defined as defendant agrees by. The text, it just says the word loss, no definition whatsoever. I would say that there is no correlation between what the defense counsel is saying is the plain meaning of loss. My understanding is defense counsel. Is arguing that the term actual loss means. The amount of money. The victim still had not recouped by the time of sentencing. And there, there's no support for that definition. Either in the text of the guideline or in the commentary for the guideline. And then if the court were to look at the courts or look at the commentary of the guideline. It's, it's completely unsupported. By that commentary. Three that I've just mentioned. But I think one of the main things, and again, getting back to the plain error point though, is that certainly the court was not understanding any of this to be an argument about the loss calculation in sense of guidelines. Correct. Because it said after defense argument and after Mr. Miller spoke. The first thing the court said was so everybody agrees that the sense they were ages 51 to 63 months. So there, there is no exercise being done by the court here that is indicating that the court is accepting its theory. The theory put forward by the defense. There's no information in the record or in the court's ruling that shows that the court was thinking of intended loss here at all. So that, that argument simply does not fit. Court didn't use the word intended loss. In ruling on that very narrow variance of explanation that defense counsel made at the time of the sentencing hearing, the court said, I don't agree that the $76,000 is the right amount, because that would equate somebody who stole a lot of money with, and was, was fortunately caught with somebody who stole a lesser amount of money. So he's really talking about how much was stolen and was correctly focused on what the offense conduct was, not what the victim covered by the time of sentencing. And we believe the court should affirm that decision. And how does Kaiser fit into your framing? Because it suggests that it's what's been used traditionally. It's a construction to resolve that theory. But are you just, you know, I just want to know if we should be commenting on that particular analysis. I don't believe you need to get to Kaiser here because it's, first of all, it's not clear that the court was looking at the commentary. The court didn't say anything about the commentary and its ruling. I think frankly, it's just making a very common sense decision that you look at the offense that has occurred. You don't look at what the victim's position is at the time of sentencing in ruling that the $76,000 was not the number that it should examine in determining the sentence here, or frankly, in, in accepting the argument, the variance argument that the defendant's sentence should be set downward to 12 months and a day. So there's really no reason to look at Kaiser here. If the court were to look at Kaiser here, it's just important to note that Kaiser does not hold that the court has to ignore the guidelines commentary. It only says that you look to see whether or not a particular guideline should receive our deference. And in doing that, the first thing you do is to say, do you get our deference? The first thing the court would look at is to say, is this particular guideline ambiguous? We would say the term loss, since it's undefined as everybody agrees, it's ambiguous insofar as it is not clearly creating the definition of I'm sure my colleagues will have additional questions for you. Thank you, Your Honor. We respectfully request that you affirm the judgment. So I want to start with what the government is saying about the definition  That is simply not the case. The definition of loss is clearly unambiguous. And that follows from common sense. The government seems to live in some kind of parallel universe where the amount taken is a definition of loss. And that is not the case. That follows again from the dictionary definition, which defines loss as the amount. It's not the same as the amount taken. And the other point is, again, the guidelines themselves use the word the offense in all 20 of the SOCs except this one. This one uses the word loss. And I don't think the government has come to grips with that. That is not, the government is citing over and over. You know, this is, we have to look at the offense itself. That's not what this loss table is asking the district court to do. It's asking the district court to look at the term and the word loss and what that means is the amount of the victim actually lost. The other point is under Kaiser, you can't look to purpose and can't look to commentary to create ambiguity, any guideline that's otherwise unambiguous. And that's, again, what the government's seeking to do by looking at number three, it's also looking at the purpose, the purpose statement in the background that is not permissible under Kaiser. The government also claimed that there's no case law that says that you look to the net detriment of the victim. There's actually a line of cases that say very clearly that in situations dealing with fortuitous recovery, the net detriment of the victim is estimated at the time of sentencing. And that's the, that's the amount of the victim actually lost. So that's the United States to be Jonathan 16 at 166 from the seventh circuit, which also cases under that, that case sites in the third circuit of the ninth circuit as well. And then for the presentation argument, obviously this was not exactly the most artful objection, but clearly it was not waived. It was not even forfeit because the district court actually considered the argument and passed on the argument. And there's nothing in this court's precedence that says that you can't raise an objection at sentencing, or even clarify what you said in the sentencing memorandum. That is what that is. And lastly, I point out that the sentencing guidelines do use, do look at intended loss in, in the, in the tax guideline, 21.1. So clearly the guidelines is capable of using it, looking and directly reports to intended loss where they need to. And certainly the guidelines of the commission is able to clean up the guidelines and, and, and make a policy call, but it can't do that in the cafeteria. It has to do that in the guidelines. So yes, part two, making the sentence and prevent her. Thank you. Thank you to both. Okay.
judges: Srinivasan, Wilkins, Childs